IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

MS. KRISTEN DAY; MRS. SONNA L. )
DAY; MR. CODY ECHOLS; MR. DAVID C. )
EICHMAN; MS. BRANDI P. GILLETTE; )
MR. CHRISTOPHER J. HEATH; MS. AMY )
E. HUGHES; MRS JERALDYN L. )
HUGHES; MR. KENNETH H. HUGHES; ) CIVIL ACTION
MS. NICOLE C. KEENE; MS. HEIDI L. )
LANDHERR; MS. ROBERTA K. ) CASE NO. 04-4085-JAR
MACGREGOR; MR. ROBERT R. MANZEL;)
MRS. KARLA A. MANZEL; MS. KAYLA L. )
MANZEL; MR. JONATHAN D. MILLER; )
MRS. MARY L. MILLER; MS. LASHONDA )
M. MONTGOMERY; MS. MICHELLE )
PRAHL; MR. KYLE ROHDE; MS. MARCY )
R. RUTAN; MR. JOSHUA B. SHEADE; MS. ) COMPLAINT FOR INJUNCTIVE AND
JAMIE WHITTENBERG; and MS. ) DECLARATORY RELIEF
LINDSEY D. WHITTINGTON, )
 )
   Plaintiffs, )
 )
 vs. )
 )
MRS. KATHLEEN SEBELIUS, personally )
and in her official capacity as Governor of )
Kansas; MR. REGINALD L. ROBINSON, )
personally and in his official capacity as )
President and Chief Executive Officer, Kansas)
Board of Regents, MR. ROBERT )
HEMENWAY, personally and in his official )
capacity as Chancellor of the University of )
Kansas; DR. JON WEFALD, personally and )
in his official capacity as President of Kansas )
State University at Manhattan; and DR. KAY )
SCHALLENKAMP, personally and in her )
official capacity as President of Emporia State )
University , )
 )
   Defendants.

1

PDF created with pdfFactory trial version www.pdffactory.com

**INTRODUCTION**

Plaintiffs, by and through their undersigned attorneys, bring this complaint against the Defendants, their agents and successors in office, and in support thereof aver the following:

1.      Plaintiffs are United States citizens enrolled in a course of study for an undergraduate or graduate degree at a public university of the State of Kansas, who have been classified under Kansas law as non-residents for purposes of payment of tuition, fees and certain other expenses.

2.      Plaintiffs bring this civil action for declaratory and injunctive relief against the Governor, the President of the Board of Regents and the Presidents of the Kansas public postsecondary educational institutions where the plaintiffs, or their dependent children, are enrolled as students.

3.      Plaintiffs seek relief from implementation by Defendants of Kansas House Bill 2145 which, effective July 1, 2004, made certain aliens present in Kansas "without lawful immigration status" eligible for valuable post-secondary education benefits, including classification as a legal resident of Kansas for purposes of determining eligibility for payment of tuition, fees and other subsidized expenses at rates not available to nonresidents.

4.      Plaintiffs further seek prospective relief from treatment by Defendants as nonresidents, including relief from payment of nonresident tuition, for so long as Defendants continue the unconstitutional and unlawful practices alleged in this Complaint.

PDF created with pdfFactory trial version www.pdffactory.com

## I. Jurisdiction and Venue

5.      This Court has jurisdiction under 28 U.S.C. § 1331 because this case arises under the Constitution and laws of the United States, under 28 U.S.C. § 1343 because this case seeks to redress the deprivation under color of state law of rights guaranteed by the Constitution of the United States, and under 28 U.S.C. 2201 (Declaratory Judgment Act).

6.      Subject matter jurisdiction is present. Plaintiffs as private parties sue Defendant state officers for prospective injunctive and declaratory relief from an ongoing violation of the Constitution and federal immigration laws.  This suit requires the interpretation of federal law.

7.      Defendants do not possess Eleventh Amendment immunity or qualified immunity when sued in their official capacity for prospective injunctive or declaratory relief to end the statutory and constitutional violations alleged in this complaint. *Ex parte Young*, 209 U.S. 123, at 159-60 (1908).  See also *Timpanogos Tribe v. Conway*, 286 F.3d 1195, at 1205 (10th Cir. 2002); *Ramirez v. Oklahoma Dept. of Mental Health*, 41 F.3d 584, 588-89 (10th Cir. 1994); *Russ v. Uppah*, 972 F.2d 300 (10th Cir. 1992); and *Nelson v. Gerringer*, 295 F.3d 1082 (10th Cir. 2002).  The Eleventh Amendment does not bar suits brought to end a continuing violation of federal law. *Cornforth v. Univ. of Okla Bd. of Regents* (263 F.3d 1129 (10th Cir. 2001).

8.      Defendants do not possess qualified immunity in their capacity as government officials from complaints for injunctive relief.  *Wyatt v. Cole*, 504 U.S. 158 (1992).  See also *Kikamura v. Hurley*, 242 F.3d 950, at 956 (10th Cir. 2001).

9.      Under 28 U.S.C. 1391, venue is proper in the United States District Court for the District of Kansas because all of the Defendants are located in the District of Kansas.

PDF created with pdfFactory trial version www.pdffactory.com

## II. Plaintiffs

10.     KRISTEN DAY is a United States citizen who has been classified as a nonresident undergraduate student at Kansas State University and as a dependent of Sonna L. Day.

11.     SONNA L. DAY is a United States citizen who is not a resident of Kansas and is the mother of Kristen Day.

CODY ECHOLS, DAVID C. EICHMAN, BRANDI P. GILLETTE, are United States citizens who have been classified as nonresident undergraduate students at Kansas State University.

12.     CHRISTOPER J. HEATH, NICOLE C. KEENE, HEIDI L. LANDHERR, KAYLA L. MANZEL LASHONDA M. MONTGOMERY, MICHELLE PRAHL, KYLE ROHDE, and LINDSEY D. WHITTINGTON are United States citizens who have been classified as nonresident undergraduate students at the University of Kansas.

13.     AMY E. HUGHES is United States citizen who is a resident of Kansas but who has been classified as a non-resident undergraduate student at Kansas State University because her parents are employed in Texas.

14.     KENNETH H. and JERALDYN L. HUGHES are United States citizens and are the parents of Amy E. Hughes.  Mr. and Mrs. Hughes are residents of Kansas, but are employed at present in Texas.

15.     ROBERTA K. MACGREGOR is a United States citizen who has been classified as a nonresident graduate student at Emporia State University.

16.     ROBERT R. and KARLA A. MANZEL are United States citizens who are not residents of Kansas and are the parents of Kayla L. Manzel.

PDF created with pdfFactory trial version www.pdffactory.com

17.     JONATHAN D. MILLER is a United States citizen who has been classified as a nonresident undergraduate student at the University of Kansas and as a dependent of Mary L. Miller.

18.     MARY L. MILLER is a United States citizen who is not a resident of Kansas and is the mother of Jonathan D. Miller.

19.     JAMIE WHITTENBERG is a United States citizen who has been classified as a nonresident graduate student at Kansas State University.

20.     Student Plaintiffs will suffer significant financial injury, in excess of $10,000 per student during the period of study for an undergraduate or graduate degree program, as well as deprivation of constitutionally protected rights, when aliens unlawfully present in the United States are deemed to be residents of Kansas, and thus receive valuable state and local public benefits that are denied to Plaintiffs.

21.     Parent Plaintiffs, who are held jointly responsible under Kansas state regulations for the added expenses incurred when their student dependants are denied status as Kansas residents on an equal basis with aliens present in Kansas without lawful immigration status, suffer similar financial and legal injuries to student Plaintiffs.


**III. Defendants**

22.     HONORABLE KATHLEEN SEBELIUS is Governor of Kansas.

23.     MR. REGINALD L. ROBINSON is President and Chief Executive Officer of the Kansas Board of Regents.

24.     DR. ROBERT HEMENWAY is Chancellor of the University of Kansas.

25.     DR. JON WEFALD is President of Kansas State University.

26.     DR. KAY SCHALLENKAMP is President of Emporia State University.

PDF created with pdfFactory trial version www.pdffactory.com

27.     Defendants, upon information and belief, are responsible for establishing or enforcing regulations and policies to implement the provisions of HB 2145 at Kansas public postsecondary educational institutions.


## IV.  The Statutory Framework

28.     The Kansas statutes applicable to this complaint are as follows:

a.     K.S.A. § 74-3201b(h), defining "postsecondary educational institution."

b.     K.S.A. § 76-729, providing the basic rule, certain authorized exceptions, and legal definitions regarding the residence of students for fee purposes.

c.     K.S.A. § 76-730  (2003), providing for the adoption by the Board of Regents of rules and regulations for criteria and guidelines regarding the residence of students for fee purposes, and establishing student residence committees for each postsecondary education institution.

d.     The full text of these statutes is provided in Exhibit A.

29.     The Kansas Administrative Regulations relevant to this complaint are as follows:

a.     K.A.R. § 88-3-1. Student Information. Prescribes the text of an informational statement to be provided to any person whenever a question arises concerning their residence classification for fee purposes.

b.     K.S.A. § 88-3-2. Definition of "residence" for fee purposes.

c.     K.A.R. § 88-3-10. Kansas high school graduates. Provides separate criteria applicable to certain recent high school graduates seeking classification as a resident for fee purposes.

d.     The full text of these statutes is provided in Exhibit B.

30.     The Federal Statutes relevant to this complaint are as follows:

a.     8 U.S.C. 1601.   Statements of national public policy concerning welfare and immigration.

PDF created with pdfFactory trial version www.pdffactory.com

b.   8 U.S.C. 1611.   Aliens who are not qualified aliens ineligible for Federal public benefits.

c.   8 U.S.C. 1621.   Aliens who are not qualified aliens or nonimmigrants ineligible for State and local public benefits.

d.   8 U.S.C. 1623.   Limitation on eligibility for preferential treatment of aliens not lawfully present on basis of residence for higher education benefits.

e.   The full text of these statutes is provided in Exhibit C.

## V.   Factual Allegations

31.   On May 20, 2004, Kansas Governor Kathleen Sebelius signed into law Kansas House Bill (HB) 2145, "An Act concerning public postsecondary education; concerning certain persons deemed to be residents for purposes of tuition and other fees at postsecondary educational institutions."

32.   The full text of HB 2145, as enacted, is as follows:

"Section 1. (a) Any individual who is enrolled or has been accepted for admission at a postsecondary educational institution as a postsecondary student shall be deemed to be a resident of Kansas for the purpose of tuition and fees for attendance at such postsecondary educational institution.
(b) As used in this section:
(1) "Postsecondary educational institution" has the meaning ascribed thereto in K.S.A. 74-3201b, and amendments thereto; and
(2) "individual" means a person who (A) has attended an accredited Kansas high school for three or more years, (B) has either graduated from an accredited Kansas high school or has earned a general educational development (GED) certificate issued within Kansas, regardless of whether the person is or is not a citizen of the United States of America; and (C) in the case of a person without lawful immigration status, has filed with the postsecondary educational institution an affidavit stating that the person or the person's parents have filed an application to legalize such person's immigration status, or such person will file such an application as soon as such person is eligible to do so or, in the case of a person with a legal, nonpermanent immigration status, has filed with the postsecondary educational institution an affidavit stating that such person has filed an application to begin the process for citizenship of the United States or will file such application as soon as such person is eligible to do so.

7

(c) The provisions of this section shall not apply to any individual who:
(1) Has a valid student visa; or
(2) at the time of enrollment, is eligible to enroll in a public postsecondary educational institution located in another state upon payment of fees and tuition required of residents of such state.
(d) Any individual who: (1) Files an affidavit which contains false information; (2) fails to file an application to legalize such person's immigration status within one year of becoming eligible;
(3) fails to begin the process for citizenship within one year of becoming eligible; or (4) fails to maintain an active application for citizenship after filing therefore shall not be deemed a resident of the state of Kansas for the purpose of tuition and fees. In addition, such individual shall be required to repay the difference between the amount of fees and tuition actually paid and the amount such person would have paid as a nonresident of the state of Kansas, plus interest at a rate not to exceed the maximum under K.S.A. 16-201, and amendments thereto, for the time such individual was enrolled as a resident pursuant to this section."

"Sec. 2. This act shall take effect and be in force from and after its publication in the statute book."

33.    HB 2145 became effective on July 1, 2004.

34.    Upon information and belief, during the Spring 2004 term:

    a.    The University of Kansas enrolled 27,772 students, of whom 1,675 were classified as non-residents, 1,662 were classified as foreign students, and 8,512 were identified as non-United States citizens.

    b.    Kansas State University enrolled 20,490 students, of whom 3,473 were classified as non-residents, 959 were classified as foreign students, and 959 were identified as non-United States citizens, and

    c.    Emporia State University enrolled 5,856 students, of whom 655 were classified as non-residents, 144 were classified as foreign students, and 140 were identified as non-United States citizens.

35.    Upon information and belief, undergraduate tuition for twelve credit hours during the Fall 2004 term, has been set as follows:

8

PDF created with pdfFactory trial version www.pdffactory.com

a.     For the University of Kansas, at  $1,665 for a resident undergraduate, $4,846.80 for a nonresident undergraduate, $2,145.60 for a resident graduate student, and $5,509.20 for a nonresident graduate student.

b.     For Kansas State University at Manhattan, at  $1,921.50 for a resident undergraduate, $5,425.50 for a nonresident undergraduate, $2.605.50 for a resident graduate student, and $6,217.50 for a nonresident graduate student.

c.     For Emporia State University, at  $1,518 for a resident undergraduate, $4,878 for a nonresident undergraduate, $1,758 for a resident graduate student, and $4,942 for a nonresident graduate student.

## VI.     Claims for Relief

### FIRST CLAIM FOR RELIEF
### VIOLATION OF 8 U.S.C. 1621

36.     Plaintiffs incorporate by reference ¶¶ 1 through 35 above.

37.     It is the intent of Congress as well as a compelling government interest to remove the incentive for illegal immigration provided by the availability of public benefits. 8 U.S.C. 1601(6).

38.     It is a national policy that aliens within the Nation's borders do not depend on public resources to meet their needs, and that the availability of public benefits should not constitute an incentive for immigration to the United States.  8 U.S.C. 1601(2).

39.     An alien unlawfully present in the United States ("illegal alien") is not a "qualified alien" as defined in 8 U.S.C. 1641.

40.     Since 1996, aliens who are not "qualified aliens" have been ineligible, with certain narrow exceptions not relevant here, to receive "any" federal public benefits. Personal Responsibility and Work Opportunity Reconciliation Act ("PRWORA"), P.L.

9

104-193, Title IV, Subtitle A, §401, 110 Stat. 2261 (Aug. 22, 1996), codified as 8 U.S.C.
1611(a).

41.    The definition of a federal benefit includes " …any… postsecondary
education… or any other similar benefit for which payments or assistance are provided
to an individual, household, or family eligibility unit by an agency of the United States
or by appropriated funds of the United States."  8 U.S.C. 1611(c)(1)(B).

42.    Since 1996, a non-U.S. citizen who is neither a "qualified alien" as defined in 8
U.S.C. 1641, nor an alien with valid nonimmigrant status under the Immigration and
Nationality Act, nor an alien paroled into the United States under INA §212(d)(5), is
ineligible for any State or local public benefit.  Personal Responsibility and Work
Opportunity Reconciliation Act ("PRWORA"), P.L. 104-193, Title IV, Subtitle B, §411,
110 Stat. 2268, codified as 8 U.S.C. 1621(a).

43.    The definition of a State or local benefit includes " …any… postsecondary
education… or any other similar benefit for which payments or assistance are provided
to an individual, household, or family eligibility unit by an agency of a State or local
government or by appropriated funds of a State or local government." 8 U.S.C. 1621(c).

44.    Kansas state government agencies that are classified as "postsecondary
educational institutions" under Kansas law K.S.A. § 74-3201b(h), including the
University of Kansas and Kansas State University, are bound by the restrictions of 8
U.S.C. 1621. Payment of tuition at greatly reduced rates is therefore as a matter of law a
state or local benefit forbidden to illegal aliens.

45.    PRWORA provided States or local governments with a single loophole by which
an alien who is not lawfully present in the United States may be made eligible for a State
or local public benefit.  Such eligibility may be provided "only through the enactment of

PDF created with pdfFactory trial version www.pdffactory.com

a State law after August 22, 1996, which affirmatively provides for such eligibility." 8 U.S.C. 1621(d).

46.     The legislative history of 8 U.S.C. 1621(d) makes clear that any state seeking to provide public benefits to illegal aliens, and to avoid the general prohibition of such benefits under 8 U.S.C. 1621, must specify that "illegal aliens" are eligible for such benefits and must reference 8 U.S.C. 1621(d). 104th Cong., 2nd Session., Conference Report No. 104-725 on H.R. 3734  (July 31, 1996), at 383:

> " No current State law, State constitutional provision, State executive order or decision of any State or Federal court shall provide a sufficient basis for a State to be relieved of the requirement to deny benefits to illegal aliens. Laws, ordinances, or executive orders passed by county, city or other local officials will not allow those entities to provide benefits to illegal aliens. *Only the affirmative enactment of a law by a State legislature and signed by the Governor after the date of enactment of this Act, that references this provision, will meet the requirements of this section.* The phrase "affirmatively provides for such eligibility" means that the State law enacted must specify that illegal aliens are eligible for State or local benefits. Persons residing under color of law shall be considered to be aliens unlawfully present in the United States and are prohibited from receiving State or local benefits, as defined, regardless of the enactment of any State law." [Emphasis added.]

47.     HB 2145 does not meet the statutory requirements of the loophole in 8 U.S.C 1621(d):

> a.     The terms "illegal alien" and "alien who is not lawfully present in the United States" are used synonymously in 8 U.S.C. 1621(d).  In contrast, the undefined term "person without lawful immigration status" is used in HB 2145.

> b.     HB 2145 does not specify that "illegal aliens" are eligible for State or local benefits, thus fails to use the express statutory language required by federal law.

> c.     HB 2145 does not even reference the provisions of 8 U.S.C. 1621(d), as intended by Congress.

PDF created with pdfFactory trial version www.pdffactory.com

d.      HB 2145 fails to restrict persons deemed to be residing in Kansas under color of law from receiving State or local benefits.

e.      HB 2145 requires Defendants to authorize Kansas postsecondary educational institutions to provide State and local benefits to aliens "without lawful immigration status."

48.      Plaintiffs are among the classes of United States citizens for whose specific benefit and protection 8 U.S.C. 1621 was enacted by Congress.

49.      Implementation of HB 2145 by the Kansas postsecondary educational institutions directed by the Defendants violates and will continue to violate 8 U.S.C. 1621 unless and until judicial relief is granted.

## SECOND CLAIM FOR RELIEF
## VIOLATION OF 8 U.S.C. 1623

50.      Plaintiffs incorporate by reference ¶¶ 1 through 49 above.

51.      8 U.S.C. 1623(a) expressly bars an alien who is not lawfully present in the United States from eligibility, on the basis of residence within a State or a political subdivision therein, for "*any* [emphasis added] postsecondary education benefit," unless a United States citizen is eligible for the same benefit (in no less an amount, duration, and scope) without regard to whether the citizen is a resident.

52.      8 U.S.C. 1623 was enacted subsequent to both the enactment and the effective dates of 8 U.S.C. 1621(d). Illegal Immigration Reform and Immigrant Responsibility Act ("IIRAIRA") §505, P.L. 1-04-208, Div. C, title V, Subtitle A, §505, 110 Stat. 3009-672 (September 30, 1996).  Section 1623 applies to benefits provided on or after July 1, 1998.  8 U.S.C. 1623(b).

12

PDF created with pdfFactory trial version www.pdffactory.com

53.     By subsequently enacting 8 U.S.C. 1623, which contains the phrase "notwithstanding any other provision of law," Congress superceded the provisions of 8 U.S.C.1621 in the area of "any postsecondary education benefit" in two ways.

54.     First, Congress eliminated the application of 8 U.S.C. 1621(d) to "any [state or local] postsecondary education benefit." By enacting 8 U.S.C. 1623, Congress withdrew the fleeting authority to provide a state postsecondary education benefit to an illegal alien that it had delegated (for a period of little over one month in mid-1996) to the legislature of the state of Kansas.

55.     Second, Congress significantly expanded the scope of the public secondary education benefits to which the provisions of 8 U.S.C. 1623 applied. As used in 8 U.S.C. 1623(a), the scope of the phrase "any postsecondary education benefit" is broader than the scope of the phrase " ...any... postsecondary education... or any other similar benefit for which payments or assistance are provided to an individual, household, or family eligibility unit by an agency of a State or local government or by appropriated funds of a State or local government" used in 8 U.S.C. 1621(c).

56.     As used in Section 1623, the definition of "any postsecondary education benefit" is thus no longer restricted to those benefits that constitute "payments or assistance... by an agency of a State or local government or by appropriated funds of a State or local government." Section 1623 sweeps more widely, to encompass "any" postsecondary educational benefit, including benefits that are not "payments" to the non-citizen student or his family. Such benefits vary from institution to institution and must include, but are not necessarily limited to, privileges such as preferences in admission, enrollment, instruction, increased access to financial aid, reduced tuition, exemption from state or local taxation on the basis of admission or enrollment as a student, and other discounted, subsidized, or restricted services or benefits that are from time to time provided to

13

PDF created with pdfFactory trial version www.pdffactory.com

students lawfully enrolled at a Kansas postsecondary education institution, but not to the general public.

57.     8 U.S.C. 1623 prohibits States from offering illegal aliens any postsecondary education benefit "on the basis of residence within a State." HB 2145 violates this prohibition and provides such benefits on the basis of residence in three ways. First, as of July 1, 2004, Defendants are now required, under HB 2145, Section 1 (a), to "deem" certain aliens without lawful immigration status "to be legal residents of Kansas." Such deeming is solely for the purpose of making such illegal aliens eligible for postsecondary education benefits. Thus, HB 2145 contravenes 8 U.S.C. 1623 by operating on the basis of residence.

58.     Second, under HB 2145, Section 1(b)(2)(A), Defendants are required to offer a postsecondary education benefit to illegal aliens who have attended accredited Kansas high schools for three or more years. Eligibility to attend an accredited Kansas high school is based on residency within the State of Kansas. As the Kansas Supreme Court noted in *Blaine v. Board of Education*, residency in the state of Kansas triggers a constitutional and statutory right "to attend our public schools." 502 P.2d 693, 704 (S. Ct. Kan. 1972) (referring to *Nutt v. Board of Education*, 278 P. 1065 (S. Ct. Kan. 1929)). Thus, it is an illegal alien's Kansas residency that entitles him to attend a Kansas high school, which in turn entitles him to postsecondary education benefits under HB 2145. In this way as well, HB 2145 contravenes 8 U.S.C. 1623.

59.     Third, under HB 2145, Section 1(c)(2), an alien who is eligible for fees and tuition for "residents" of another state is deemed ineligible for the postsecondary education benefit offered by the State of Kansas. Thus, being a resident of another state disqualifies an illegal alien from obtaining this education benefit. Therefore, only an illegal alien who is a resident of Kansas is eligible to receive the postsecondary

14

PDF created with pdfFactory trial version www.pdffactory.com

education benefit offered under HB 2145. This eligibility violates 8 U.S.C. 1623. So long as such eligibility exists, Defendants are in violation of federal law.

60.     HB 2145 also requires Defendants to deny nonresident U.S. citizen plaintiffs eligibility for those same postsecondary education benefits in the same amount, duration, and scope, as they are offered to the aliens without lawful immigration status who, pursuant to HB 2145, are deemed to be legal residents of Kansas. So long as such denials must occur under color of Kansas state law, Defendants are in violation of federal law.

61.     Plaintiff students and parents of dependent students are among the classes of United States citizens for whose specific benefit and protection 8 U.S.C. 1623 was enacted by Congress.

62.     Unless and until judicial relief is granted, implementation of HB 2145 by Kansas postsecondary educational institutions under the direction of the Defendants violates and will continue to violate 8 U.S.C. 1623.

### THIRD CLAIM FOR RELIEF
### VIOLATION OF REGULATIONS GOVERNING ALIEN STUDENTS

63.     By implementing HB 2145, Defendants violate the comprehensive regulatory scheme enacted by the federal government to govern the admission of nonimmigrant aliens to the United States for the purpose of enrolling them as students at postsecondary educational institutions. This comprehensive regulatory scheme is codified at 8 U.S.C. 1101(a)(15)(F) and (M); P.L. 104-208 (IIRAIRA) §641(1997); 8 C.F.R. 214.2, 214.3 and 214.4.

64.     Alien students at postsecondary academic institutions are also subject to the general conditions of admissions applicable to all nonimmigrants, in particular the requirement to obtain and maintain legal status. 8 U.S.C. 1182(a)(6)(A); 8 U.S.C.

PDF created with pdfFactory trial version www.pdffactory.com

1251(a)(1)(C)(i); 8 U.S.C. 1202(g).  Each academic institution accepting nonimmigrant alien students must first petition to accept nonimmigrant students on Form I-17 and designate a foreign student advisor known as a Principal Designated School Official (PDSO) who is responsible to maintain the institution's Student and Exchange Visitor System (SEVIS) in conformity with federal law and regulations. 8 C.F.R. 214.3. Approval of an institution may be revoked for failure to comply with federal immigration statutes or regulations.  8 U.S.C. 214.4.

65.     The provision of affirmative postsecondary education benefits to aliens who are known to Defendants to have been unlawfully present in the United States for at least three years, by means of an impermissible state determination that such aliens are members of one of five arbitrary state immigration classifications and thereby deemed to be legal state residents, while at the same time Defendants have knowingly waived the requirement that the PDSOs under the Defendant's control observe the federal procedures required to admit such aliens in a nonimmigrant student status (or in some other lawful immigration status which permits attendance at an institution for postsecondary academic study), violates 8 U.S.C. 1101(a)(15)(F) and (M); P.L. 104-208 (IIRAIRA) §641(1997); 8 C.F.R. 214.2, 214.3 and 214.4.

66.     The SEVIS registration system was implemented to serve the compelling national interest of preventing alien terrorists from concealing their activities in the United States by posing as university students.  HB 2145 frustrates this federal purpose by allowing aliens to illegally pose as students at Kansas institutions of higher education while remaining outside the SEVIS registration system.  This not only violates the federal regulations cited above, it endangers U.S. national security.

PDF created with pdfFactory trial version www.pdffactory.com

## FOURTH CLAIM FOR RELIEF
## PREEMPTION

67.     Plaintiffs incorporate by reference ¶¶ 1 through 66 above.

68.     Federal immigration law, codified in Title 8 of the United States Code, is a complex regulatory scheme that regulates, *inter alia*, the authorized residence status of aliens. *Gonzales v. City of Peoria*, 722 F.2d 468, at 474-475 (9th Cir. 1983).

69.     HB 2145 is a scheme for the state regulation of immigration that contravenes federal law.  For the purposes of determining eligibility for postsecondary education benefits pursuant to HB 2145, Defendants are deliberately prohibited from adhering to mandatory federal standards that determine whether a non-citizen is lawfully resident in the United States.

70.     Defendants must instead implement an independent and arbitrary set of statutory criteria that purport to classify applicants to Kansas postsecondary educational institutions based on a state-defined immigration status. HB 2145 requires Kansas postsecondary educational institutions to determine eligibility of applicants for state and local postsecondary education benefits using a new multi-pronged, state-created immigration status classification of "individual."   The immigration classification of "individual", as defined by HB 2145, is not found in or recognized under any federal law or regulation, and thus is an illegal regulatory scheme that contravenes federal immigration law.

71.     The new state immigration classification of "individual" mandated by HB 2145 subsections 1(b) and 1(c) in fact creates at least five new distinct immigration classifications operative only in Kansas:

> (1) A person who is not a United States citizen and does not possess a valid "student" (F) visa, but has some other "lawful immigration status" other than "a legal nonpermanent immigration status," who has attended an accredited Kansas

PDF created with pdfFactory trial version www.pdffactory.com

high school for at least three years and has either graduated from such high school or has earned a GED certificate issued within Kansas.

(2) A person without lawful immigration status who has nonetheless attended an accredited Kansas high school for at least three years, who has either graduated from such high school or has earned a GED certificate issued within Kansas, and who has filed an affidavit with the postsecondary educational institution stating that such person (or the person's "parents") have "filed an application to legalize such person's immigration status."

(3) A person described in (2), except that the person (or the person's "parents") has not filed the subject application to "legalize" his or her "immigration status," but will do so "as soon as such person is eligible to do so."

(4) A person who is an alien with "a legal, non-permanent immigration status," but who does not possess a valid "student" (F) visa, who has nonetheless attended an accredited Kansas high school for at least three years and has either graduated from such high school or has earned a GED certificate issued within Kansas, and who has filed an affidavit with a Kansas postsecondary education institute stating that he or she "has filed an application to begin the process for citizenship of the United States."

(5) A person described in (4), except that he or she is not eligible to "file[] an application to begin the process for citizenship of the United States" but will do so "as soon as such person is eligible to do so."

72.     The unlawful regulatory scheme of HB 2145 also prescribes, in subsections 1(b) and 1(c), unique State-imposed criteria for eligibility for state or local public benefits that contain the following undefined sub-elements, which are not found in federal law and are not otherwise authorized by Congress:

PDF created with pdfFactory trial version www.pdffactory.com

(a) "Lawful immigration status."

(b) "Legal nonpermanent immigration status."

(c) "An application to legalize a person's immigration status."

(d) "An application to begin the process for citizenship of the United States."

(e) The "soonest" date a person is "eligible" to file an application described in (c) or (d).

73.     There is no indication in the language of HB 2145 or its legislative history of the meaning of the five undefined phrases, although state officials are required to apply these terms when adjudicating the residency status of certain non-citizen applicants.

74.     State law is preempted in any area where Congress intended to "occupy the field."  U.S. Constitution Article VI, cl. 2; *Gibbons v. Ogden*, 9 Wheat. 1, at 211 (1824); *Savage v. Jones*, 225 U.S. 501, at 533 (1912); *California v. ARC America Corp.*, 490 U.S. 93, at 101 (1989).

75.     Congress clearly intended to "occupy the field" in the area of regulating the provision of public benefits to aliens without a lawful immigration status. The power to regulate immigration is unquestionably an exclusively federal power, and any state statute that regulates immigration is unconstitutional and therefore proscribed.  *De Canas v. Bica*, 424 U.S. 351, at 354-55 (1976).  States can neither add to nor take from conditions lawfully imposed upon the admission or residence of aliens in the United States. *Takahashi v. Fish & Game Comm'n*, 334 U.S. 410, at 419 (1948).  Congress has firmly established that there is a significant public interest in the effective enforcement of immigration law.  *U.S. v. Brignoni-Ponce*, 422 U.S. 873, at 878 (1975); *INS v. Miranda*, 459 U.S. 14, at 19 (1982).

76.     Even if Congress had not occupied the field, a state statute is preempted to the extent it conflicts with an existing federal statute. *Hines v. Davidowitz*, 312 U.S. 52, at 66-67 (1941); *ARC America Corp., supra*, at 100-101.

19

PDF created with pdfFactory trial version www.pdffactory.com

77.     HB 2145 is preempted because it is impossible for a person who is an illegal alien or otherwise unlawfully present in the United States to both receive postsecondary education benefits under HB 2145, and to comply with federal immigration law. See, e.g., *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, at 142-143 (1963).

78.     HB 2145 is also preempted by federal law because it requires officials of Kansas postsecondary educational institutions, under the direction of the Defendants, to define, determine, and adjudicate the application of immigration classifications and procedures that do not exist under federal law to alien applicants for admission.

79.     HB 2145 is also preempted because it is "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," in particular the enforcement of immigration law, as articulated in 8 U.S.C. 1601.

80.     By deeming certain illegal aliens to be "individuals" who are legal residents of Kansas for purposes of eligibility for postsecondary education benefits, HB 2145 is intended to and in fact resists and impedes the enforcement of immigration law by federal officials, and is therefore generally preempted by the Supremacy Clause of the United States Constitution.   U.S. Constitution Article. VI Cl.2; *McCulloch v. Maryland*, 17 U.S. 316 (1819).


### FIFTH CLAIM FOR RELIEF
### CREATION OF RESIDENCE STATUS CONTRARY TO FEDERAL LAW

81.     Plaintiffs incorporate by reference ¶¶ 1 through 80 above.

82.     Prior to the enactment and implementation of HB 2145, Kansas law, in accordance and conformity with federal law, did not permit illegal aliens to qualify as legal or domiciliary residents of Kansas for purposes of resident tuition payment. K.S.A. 76-729.

20

PDF created with pdfFactory trial version www.pdffactory.com

83.     Congress has created a legal disability under federal law that renders illegal

aliens incapable of claiming *bona fide* legal domicile in Kansas, notwithstanding the fact

of physical presence or a subjective "intent" to remain indefinitely in the jurisdiction.

84.     An alien may only establish his or her legal domicile in a state if not otherwise

precluded by the Immigration and Nationality Act from establishing residence in the

United States. 8 U.S.C. 1101, *et seq.*; *Elkins v. Moreno, supra,* at 666.  Only the federal

government, pursuant to federal immigration law and regulations, may regulate and

determine the authorized residence status of aliens. *Gonzales v. City of Peoria, supra,* at

475.

85.     Legal residence and domicile in Kansas are based on physical presence and

intent, objectively determined, to remain and reside in Kansas indefinitely, and are

substantially equivalent in meaning.  See *Kansas Attorney General Op. 90-138,* 1990

Kan. AG LEXIS 39 (1990).  See also the definitions of residence and domicile in K.S.A.

77-201 and K.A.R. 92-12-4.

86.     Congress intended that aliens who *seek to establish domicile* without an

adjustment of status, while in an immigration classification which prohibits permanent

residence, are to be deported. *Elkins v. Moreno,* 435 U.S. 647, at 664-65 (1978).  Illegal

aliens are detainable and deportable, and may be barred for ten years or more from

reapplying for legal admission to the United States. 8 U.S.C. 1182(a)(9)(B), INA

§212(a)(9)(B).

87.     In the case of non-citizens, the existence of a legal disability to the establishment

of domicile is exclusively a matter of federal law. *Martinez v. Bynum,* 461 U.S. 321

(1983), citing *Nyquist v. Mauclet,* 432 U.S. 1 (1977); *Carlson v. Reed,* 249 F.3d 876 (9th

Cir. 2001) [in-state resident tuition denied]; *Hein v. Arkansas State Univ.,* 972 F. Supp

1175 (E.D. AR 1997) [in-state resident tuition denied].  In *Elkins v. Moreno, supra,* the

PDF created with pdfFactory trial version www.pdffactory.com

U.S. Supreme Court remanded the question of whether an alien without lawful immigration status could possess the required intent to establish domicile to the Maryland Court of Appeals.  The Maryland Court of Appeals clearly articulated the principle of law at issue, and its application to illegal aliens in the context of eligibility for resident tuition.  *Toll v. Moreno*, 284 Md. 425, at 442-43 (1979):

> "If under federal law a particular individual must leave this country at a certain date, or cannot remain here indefinitely, then he could not become domiciled in Maryland.  Any purported intent to live here indefinitely would be inconsistent with law. It would be at most an unrealistic subjective intent, which is insufficient under Maryland law."

88.     None of the class of alien beneficiaries of HB 2145 who are illegal aliens possess federal authorization to remain in the United States for even the shortest period of time, and therefore cannot, as a matter of law acquire or possess the requisite intent to be a legal resident or domiciliary of Kansas. Kansas may not deem such non-citizens to possess such intent, nor alternatively waive such intent by exercise of its legislative powers.

89.     By arbitrarily deeming certain illegal aliens to be legal residents of Kansas by operation of state law HB 2145, where no provision for such classification exists in federal law or regulation, Defendants violate the comprehensive federal regulatory scheme for aliens contained in Chapter 12 (Immigration and Nationality), Chapter 13 (Immigration and Naturalization Service), and Chapter 14 (Restricting Welfare and Public Benefits For Aliens, and Chapter 15 (Enhanced Border Security and Visa Entry Reform) of Title 8 of the United States Code, popularly known as federal immigration law.

## SIXTH CLAIM FOR RELIEF
## INFRINGEMENT UPON EXCLUSIVE FEDERAL POWERS

90.     Plaintiffs incorporate by reference ¶¶ 1 through 89 above.

PDF created with pdfFactory trial version www.pdffactory.com

91.     Regulation by state statute of the terms and conditions under which illegal aliens may enter the State of Kansas in violation of federal law and obtain state postsecondary education benefits, which the State denies to U.S. citizen and alien legal residents of other states, impermissibly infringes on Constitutional powers reserved to the federal government.

92.     By implementation of HB 2145, Defendant state executive officers violate multiple clauses of the United States Constitution that vest the conduct of foreign affairs in the federal government, almost to the exclusion of individual states and local governments.  U.S. Constitution, Article I Section 8, Clause 1 (General police power to provide for common defense and general welfare), Clause 3 (Interstate Commerce), Clause 4 (Naturalization), Clause 10 (Offenses against Law of Nations) and Clause 11 (War and Capture Powers), and Section 10, Clause 1 (Powers denied to States), Clause 2 (Imposts and Duties) and Clause 3 (State compacts); *Crosby v. National Foreign Trade Council*, 530 U.S. 363 (2000).  Implementation of HB 2145 by defendants will impermissibly encourage, induce and abet the travel and transport of aliens into and across the United States from abroad in violation of federal immigration law and foreign policy, in order that such aliens may engage in the federally prohibited action of enrollment and study without federal authorization at a Kansas public postsecondary educational institution, for the purpose of remaining indefinitely in the United States.

93.     By implementation of HB 2145, Defendants violate, under color of state law, the exclusive Congressional plenary power over interstate commerce. Such federal power applies to the regulation of immigration.  *Hoke v. U.S.*  227 U.S. 308, at 320 (1913); *Oceanic Steam Navigation Co. v. Stranahan*, 214 U.S. 320  (1909); *Compagnie Francaise De Navigation A Vapeur v. Louisiana State Bd. of Health*, 186 U.S. 380  (1900).

PDF created with pdfFactory trial version www.pdffactory.com

94.     Congress has enacted a comprehensive federal scheme (labor certification) for the regulation of interstate and international commerce in immigrant and nonimmigrant alien labor, whose purpose is the protection of wages and working conditions of United States workers.  8 U.S.C.  1153(b)(3)(C), 8 U.S.C. 1154(b), and 8 U.S.C. 1182(a)(5)[employment-based immigrants; 8 U.S.C. 1101(a)(15)(E), (H) and (L); 8 U.S.C. 1184, and North American Free Trade Act Annex 1603.D.1. [temporary nonimmigrant workers].  Implementation of HB 2145 by Defendants violates this comprehensive protective scheme by unlawfully providing state-funded financial incentives for illegal aliens to obtain skills with which such aliens may and will unlawfully compete with Plaintiffs for employment opportunities. The classification of illegal aliens as residents of Kansas for purposes of eligibility for postsecondary education benefits has a regulatory effect on commerce both in Kansas, the receiving state, and the foreign states from which the illegal alien applicants have been unlawfully transported.

95.     For so long as illegal aliens are permitted, encouraged, and induced by the Defendants to enter Kansas and apply for and receive such benefits, without regard for the federal statutory standards protecting U.S. worker wages and working conditions, the implementation of HB 2145 will constitute an impermissible regulation of interstate commerce. *Heart of Atlanta Motel, Inc. v. U. S.*, 379 U.S. 241, at 254 (1964).


### SEVENTH CLAIM FOR RELIEF
### VIOLATION OF EQUAL PROTECTION CLAUSE OF U.S. CONSTITUTION

96.     Plaintiffs incorporate by reference ¶¶ 1 through 95 above.

97.     Defendants, by acting under color of state law to implement HB 2145, will extend postsecondary education benefits to a particular class of persons in the United States.  Specifically, Defendants will extend such benefits to nonimmigrant aliens

24

known to be unlawfully present in the United States for at least three years, whom the State of Kansas has impermissibly determined to be members of one of five arbitrary state immigration classifications, and deemed therefore to be legal residents of the State of Kansas.

98.     Illegal aliens have been deemed by Defendants to be Kansas residents for the express purpose of affording such aliens state postsecondary education benefits to which they are not entitled under federal law.  Defendants have further denied nonresident U.S. citizen Plaintiffs the identical postsecondary education benefits to which they are expressly entitled by federal law.

99.     State laws that draw distinctions on the basis of alienage must meet the requirements of the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution.  *Graham v. Richardson*, 403 U.S. 365, 367 (1971).   State laws that discriminate between U.S. citizens and illegal aliens in the extension of educational benefits are evaluated under "heightened" review, rather than mere rational basis review. *Plyer v. Doe*, 457 U.S. 202, 238 (1982)(Powell, J., concurring)(citing *Craig v. Boren*, 429 U.S. 190 (1976)).  Accordingly, the State's discriminatory treatment of Defendants can only withstand constitutional challenge if it serves important governmental objectives and is substantially related to those objectives.  *Craig v. Boren*, 492 U.S. 190, 197 (1976).

100.    Discriminating against U.S. citizens in favor of illegal aliens in the provision of postsecondary education benefits does not serve any important government objective. Awarding valuable benefits to individuals whose presence in the United States constitutes an ongoing violation of federal law plainly undermines the general governmental objective of promoting the rule of law.  Moreover, any purported government interest in encouraging higher education in the State's workforce is

PDF created with pdfFactory trial version www.pdffactory.com

unpersuasive, because the illegal alien recipients of such postsecondary education benefits are not legally eligible to remain in the State of Kansas after completing their courses of study.

101.    Defendants, by acting under color of state law to implement HB 2145, will also discriminate in the extension of postsecondary education benefits between illegal aliens and aliens who are lawfully present in the United States and in possession of "a valid student visa." Lawfully present aliens are expressly denied such benefits in HB 2145, Section 1(c)(1). This distinction expressly rewards those aliens who have violated federal law with a benefit that is denied to those aliens who have complied with federal law. Such a distinction constitutes an incentive to violate federal law and cannot even survive rational basis review.

102.    Implementation of HB 2145 by Defendants will violate the constitutional rights of Plaintiff U.S. citizens to equal protection of the law under the Fourteenth Amendment, by denying Plaintiffs eligibility to apply for and receive similar postsecondary education benefits on an equal basis. This Court may grant Plaintiffs declaratory and injunctive relief pursuant to 42 U.S.C. 1983.

## PRAYER FOR DECLARATORY RELIEF

103.    Plaintiffs incorporate by reference ¶¶ 1 through 102 above.

104.    An actual controversy exists between Plaintiffs and Defendants regarding the legality, constitutionality, and enforceability by the Defendants of HB 2145.

105.    Plaintiffs are entitled to a declaration on the constitutionality and legality of the challenged state statute.

PDF created with pdfFactory trial version www.pdffactory.com

## PRAYER FOR INJUNCTIVE RELIEF

106.    Plaintiffs incorporate by reference ¶¶ 1 through 105 above.

107.    Plaintiff's claims meet the standard for injunctive relief because (1) they have no adequate remedy at law; (2) they will suffer immediate and continuing harm if required to pay significantly greater tuition and expenses associated with nonresident status; (3) Plaintiffs are likely to succeed on the merits of their claims; and (4) Defendants will suffer no harm in being denied the opportunity to implement HB 2145 in the circumstances alleged in this case pending resolution of the merits of the case. Issuance of the injunction will retain the status quo.

~ * * * ~

WHEREAS, because of the actions alleged above, Plaintiffs respectfully ask this Court to grant the following relief:

A.      That a preliminary and a permanent injunction be issued enjoining the Defendants in perpetuity from enforcing HB 2145 with respect to the provision of postsecondary education benefits to aliens who are unlawfully present in the United States.

B.      That HB 2145 be declared to be in violation of federal law and unconstitutional as applied to the provision of postsecondary education benefits to aliens who are unlawfully present in the United States; and

C.      That the Defendant's be further enjoined from discriminating between Plaintiffs and students who have been classified as legal residents of Kansas, as regards admission and enrollment practices, charges for tuition and fees, and any other services or facilities provided by Kansas postsecondary educational institutions, until such time as this Court is informed that the illegal and unconstitutional practices embodied in HB 2145 are no longer in effect; and

PDF created with pdfFactory trial version www.pdffactory.com

D.     That Plaintiffs recover from Defendants all of Plaintiff's reasonable attorney's fees, expenses, and costs under 42 U.S.C. 1988, as this Court deems just and proper; and

E.     That Plaintiffs be granted any further relief as the Court deems just and proper.

PDF created with pdfFactory trial version www.pdffactory.com

Dated:  July 19, 2004

Kris W. Kobach, Esq.
Attorney at Law
Kansas Bar No. 17280
9159 Kessler
Overland Park, KS 66212
Telephone: 913-638-5567
Facsimile: 816-235-5276
E-mail: kobachk@umkc.edu

Attorney for Plaintiffs

Of Counsel:

Michael M. Hethmon, Esq.**
Maryland Bar
District Court Md. #15719
1666 Connecticut Ave. N.W.
Washington DC 20009
Telephone: 202-328-7004
Facsimile: 202-387-3447
E-mail: attorney@fairus.org

** Motion for admission *pro hac vice* pending.

29

PDF created with pdfFactory trial version www.pdffactory.com

## DESIGNATION OF PLACE OF TRIAL

Plaintiffs hereby designate Topeka, Kansas, as the place of trial.

PDF created with pdfFactory trial version www.pdffactory.com