IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KRISTEN DAY, et al.,            )
                               )
              Plaintiffs,      )
                               )
v.                             )        Case No. 04-4085-RDR
                               )
KATHLEEN SEBELIUS, et al.,     )
                               )
              Defendants.      )

**<u>MEMORANDUM AND ORDER</u>**

**I.  Introduction and Background.**

This suit challenges the legality of Kansas House Bill No. 2145 ("HB 2145"), which

went into effect on July 1, 2004.  Highly summarized, HB 2145 makes certain undocumented

aliens in Kansas eligible for favorable in-state college tuition rates.[1]  To qualify, the student

simply must have attended an accredited Kansas high school for at least three years, received

a high school diploma or general educational development certificate from a Kansas

institution, and not be a resident of another state.   In addition, undocumented and

documented non-citizen aliens must sign an affidavit agreeing to upgrade their immigration

status as soon as they are eligible.

This suit was filed by Kristen Day, along with more than twenty other named

plaintiffs, all of whom allegedly are students (or their parents who support them financially)

---

[1] In fact, the language of HB 2145 does not limit its application to undocumented
aliens.  However, as a practical matter, it is unlikely that others would benefit from the law.

classified as non-residents for purposes of college tuition and fees at state-funded institutions in Kansas.  Plaintiffs have sued Kathleen Sebelius (the Governor of Kansas), along with various university officials who are responsible for implementing HB 2145.  Plaintiffs seek declaratory and injunctive relief, specifically, to prevent defendants from discriminating between them and the undocumented aliens who have been classified as residents for the more favorable in-state tuition rates.  In support of their suit, plaintiffs contend that HB 2145 violates two federal statutes, 8 U.S.C. §§ 1621 and 1623.  Plaintiffs further contend that HB 2145 violates their Equal Protection rights under the Fourteenth Amendment to the United States Constitution, as well as other provisions of the Constitution.

This case is now before the court on the motion of the Kansas League of United Latin American Citizens ("Kansas LULAC"), the Hispanic American Leadership Organization ("HALO"), Kansas State [University] chapter, and three presently anonymous college students (A. Doe, J. Doe, and L. Doe), all of whom seek leave to intervene as additional defendants **(doc. 11)**.  Two of the proposed Doe defendants are enrolled at Kansas State University in Manhattan, and the third is enrolled at the University of Kansas in Lawrence; all three also have filed a separate motion for a protective order, seeking to allow them to continue to proceed anonymously in this litigation **(doc. 13)**.

Plaintiffs have filed a consolidated response opposing both of the above-described motions (doc. 31).  In addition, the court has considered the memorandum filed in support of the motion to intervene (doc. 12), the proposed intervenors' already-filed answer to

plaintiffs' amended complaint (doc. 40), the memorandum filed in support of the motion for protective order (doc. 14), the memorandum in support of plaintiffs' consolidated response (doc. 32), the proposed intervenors' reply brief with regard to the motion to intervene (doc. 36), and finally, the proposed intervenors' reply in support of the motion for protective order (doc. 37).  The court is now ready to rule.

Plaintiffs, it should be noted, suggest that the above-described motions present "weighty substantive issues," specifically:  (1) whether any of the proposed intervenors has a fundamental property stake at issue in this case; (2) whether Article III standing exists for organizational entities such as Kansas LULAC and HALO to intervene; and (3) whether the court may enter any protective order that would serve to conceal the identity of undocumented aliens.  Plaintiffs further suggest, but without citing any authority, that the undersigned magistrate judge should confine his involvement to "preliminary" or "procedural" issues, so as to allow the Hon. Richard D. Rogers, Senior U.S. District Judge, to decide the motions.

Plaintiffs apparently misunderstand the powers conferred to magistrate judges in this district by virtue of 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72, and D. Kan. Rule 72.1.1(c) and (d).  Although the powers of a federal magistrate judge are more limited than those of a district judge, the relevant distinction is between "non-dispositive" and "dispositive" rulings, i.e., absent the consent of all parties, a magistrate judge only may make the former and may not make the latter.  As a matter of law, an order granting leave to intervene is non-

dispositive.[2]  Further, plaintiffs certainly cannot seriously suggest that a routine motion for protective order is dispositive.  In any event, having been informed of plaintiffs' record position, Judge Rogers has asked the undersigned to proceed with deciding these motions.

Regardless of whether plaintiffs' stated concerns are well-placed, the undersigned does not presume to establish any "law of the case" as it relates to the relative merits of the parties' positions concerning the legality of HB 2145.  If Judge Rogers disagrees with any of the undersigned's findings in support of the non-dispositive rulings made in this order, surely Judge Rogers will feel free to make that disagreement known when he makes his dispositive rulings.[3]

In any event, for the reasons set forth below, the motion to intervene of Kansas LULAC, HALO, and A. Doe, J. Doe, and L. Doe, will be granted.  The motion for protective order by the Doe intervenors, however, will be denied.

## II.  Analysis and Discussion.

### A.      Motion for Intervention.

As mentioned earlier, the proposed intervenors include three undocumented alien students, A., J., and L. Doe, who allegedly meet the conditions required by HB 2145 and who

---

[2] *See United States v. Certain Real Property*, 751 F.Supp. 1060, 1061 (E.D.N.Y. 1989).

[3] Judge Rogers will rule, among other dispositive issues, the motions to dismiss filed by the proposed intervenors and the various Kansas state defendants (docs. 41 and 43, respectively).  These motions to dismiss probably will not have been fully briefed until mid-March 2005 (*see* doc. 46).

are benefitting from new law, i.e., they currently are enrolled in Kansas public universities and are paying in-state tuition. In addition, the proposed intervenors include Kansas LULAC and HALO, both of which allege they are membership organizations that "likely include either undocumented students or parents of undocumented students [to] join these three students."[4]

Intervention is governed by Rule 24 of the Federal Rules of Civil Procedure. It provides:

> (a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

> (b) Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common.
> . . .
> In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

---

[4] Doc. 11, at 2.

The proposed intervenors argue that intervention is appropriate in this case as a matter of right under Rule 24(a)(2), and permissively under Rule 24(b)(2). Plaintiffs, however, argue that the applicable criteria have not been met for either type of intervention.

As explained below, the court finds that the proposed intervenors should be allowed to intervene as a matter of right pursuant to Rule 24(a)(2). Thus, the court need not discuss at length permissive intervention under Rule 24(b)(2).[5]

## 1.    Compliance with Rule 24(c).

Plaintiffs assert that intervention – whether as a matter of right or permissive – should be denied because the proposed intervenors have failed to comply with Fed. R. Civ. P. 24(c). As applied here, Rule 24(c) requires that a pleading setting forth the proposed intervenors' defenses "accompany" their motion to intervene.

The opening sentence of the motion to intervene suggests that a proposed answer is attached to the motion, but it is not. The court's electronic case filing system reflects, however, that just eighteen minutes after the motion to intervene was filed, the proposed intervenors filed their answer to plaintiffs' original complaint (doc. 15). And, after plaintiffs

---

[5] If the court were to address the issue of permissive intervention at length, that issue very likely would be resolved in favor of the proposed intervenors. That is, as discussed in section II(A)(4) of this decision, it is clear that the motion to intervene is timely. There are common questions of law and fact between the proposed intervenors' defenses and plaintiffs' claims. And the intervention will not unduly delay or prejudice the rights of the original parties. Therefore, permissive intervention appears appropriate under Rule 24(b)(2). *See Ames v. Uranus, Inc.*, No. 92-2170, 1992 WL 281399, at *1 (D. Kan. Sept. 14, 1992).

filed an amended complaint (doc. 38), the proposed intervenors filed an answer to the amended complaint (doc. 40).

Technically, the court believes, the proposed intervenors should not have filed an answer before obtaining leave to intervene. But Rule 24(c) is less than clear with regard to whether any unsigned copy of the complaint or answer of the proposed intervenor should be attached as an exhibit to the motion for intervention, or whether the complaint or answer of the proposed intervenor simply should be signed and filed. The former seems preferable (i.e., less presumptuous), and indeed that approach is implicitly sanctioned by Form 23 in the Appendix to the Federal Rules of Civil Procedure. Still, though, plaintiffs have cited no authority for the proposition that the suggested form absolutely must be followed. Given that even plaintiffs acknowledge that the rationale of Rule 24(c) is simply to put the court (and the non-moving party) in a meaningful position to determine whether intervention is appropriate,[6] and given the state of the record in this case, it seems a bit of a stretch for plaintiffs to argue that Rule 24(c) constitutes any serious impediment to the court granting intervention. To accept plaintiffs' Rule 24(c) argument here would elevate form over substance, something the court naturally declines to do.

---

[6] *See Hill v. Kansas Gas Serv. Co.*, 203 F.R.D. 631, 634 (D. Kan. 2001).

2.    **The Proposed Intervenors' Interest in the Controversy.**

Intervention of right pursuant to Rule 24(a)(2) should be allowed "where no one would be hurt and greater justice could be attained."[7] Plaintiffs do not appear to contend that any party would be harmed by allowing the proposed intervention. Instead, the gist of plaintiffs' argument is that the proposed intervenors do not have a legally protectable interest "relating to the property or transaction which is the subject of" this action, as required by Rule 24(a)(2).

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."[8] It is well-established in this regard that educational benefits created by statute are property interests that cannot be taken away without adherence to the minimum procedural requirements of Due Process.[9]

The anonymous proposed intervenors, as noted above, currently are benefitting from HB 2145, in that they are attending Kansas public universities and paying favorable in-state tuition rates. Likewise, plaintiffs do not seriously dispute that HALO and Kansas LULAC have members who are entitled to exercise their rights under HB 2145 as the law currently stands.

---

[7] *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1250 (10th Cir. 2001).

[8] *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).

[9] *See Goss v. Lopez*, 419 U.S. 565, 574 (1975).

Plaintiffs argue that HB 2145 cannot create a property interest because the law is unconstitutional.  Plaintiffs also argue that previous cases holding that educational benefits were a property interest must be interpreted as limited to instances where the beneficiary is a citizen of the United States.  Finally, plaintiffs argue that any right created by HB 2145 is not substantial enough to rise to the level of constitutional protection, since HB 2145 does not create a right to education, but rather only a right to reduced tuition.

As earlier indicated, plaintiffs' primary argument is that the statute at issue cannot create a property interest because the statute is unconstitutional.  This argument is circular and thus wholly unpersuasive.  Regardless of today's ruling on the issue of intervention, Judge Rogers later will decide the merits of plaintiffs' constitutional challenge to HB 2145.  Presently, though, HB 2145 is the law of the state of Kansas, and that law creates a right to in-state tuition for certain undocumented aliens.  Unless _and_ until it is ultimately decided that HB 2145 is unconstitutional, the law is in force and, as such, is sufficient to confer a legally protectable interest in the proposed intervenors.

Plaintiffs' second argument, that the Due Process Clause of the Fourteenth Amendment protects only educational rights of United States citizens, is equally without merit.  That is, it is well-established that Due Process protections inure to undocumented aliens residing in the United States.[10]

---

[10] _See Plyler v. Doe_, 457 U.S. 202, 210 (1982).

Plaintiffs' third argument, that the purported right at stake is not substantial enough to merit constitutional protection, also fails. Whether a student is required to pay nonresident or in-state tuition is an issue that the Supreme Court addressed in a different context in *Vlandis v. Kline*.[11] The court construes the opinion in that case as determining that the right to be treated as a resident for state college tuition purposes is a cognizable right for Due Process purposes. Even were the proposed intervenors' interest considered only economic, it is well-settled that monetary interests related to a case may be protected through intervention.[12] Moreover, the court has found no law requiring that the interest required by Rule 24(a)(2) be a "fundamental" interest, at least as argued and defined by plaintiffs.[13]

Therefore, the court concludes that the proposed intervenors do have an interest in this case and that they have satisfied that portion of Rule 24(a)(2). Further, for essentially the same reasons, the court concludes that the proposed intervenors' ability to protect that interest may be impaired or impeded by the disposition of this action.

**3.     Adequate Protection of the Proposed Intervenors' Interests.**

Under Rule 24(a)(2), the proposed intervenors must show that their interests are not adequately represented by the current parties. The Tenth Circuit in this regard has stated:

---

[11] 412 U.S. 441 (1973).

[12] *See Utah Ass'n of Counties*, 255 F.3d at 1252.

[13] Cases have called this interest a "substantial legal interest." *Id.*, at 1253. The court concludes that the proposed intervenors have alleged a substantial legal interest in this controversy.

> Although an applicant for intervention as of right bears the burden of showing inadequate representation, that burden is the minimal one of showing that representation may be inadequate. The possibility that the interests of the applicant and the parties may diverge need not be great in order to satisfy this minimal burden.[14]

The proposed intervenors have satisfied their minimal burden.  As noted above, the current defendants include the Governor of Kansas and various university officials who are responsible for implementing HB 2145.  To the court's knowledge, none of these existing defendants are or ever will be personally impacted by HB 2145.  The proposed intervenors may have access to evidence that the government of the state of Kansas and the officials of Kansas colleges may not have.[15]

The existing defendants presumably are seeking to protect the interests of the public in Kansas, as well as the global interests for all of the public Kansas universities.  Although these defendants and the proposed intervenors would be on the "same side" of the case and as such generally opposed to plaintiffs' arguments, the private interests of the proposed intervenors may diverge from the above-described public interests at some point.  This is particularly true where, as here, the proposed intervenors' private interests are viewed by some in state government as controversial (and thus politically risky) public policy interests. In this regard, the record reflects that, on July 21, 2004, three weeks after HB 2145 went into

---

[14] *Id.*, at 1254 (citations and quotations omitted).

[15] *See id,* at 1255 (citing *Nat'l Farm Lines v. Interstate Commerce Comm'n*, 564 F.2d 381 (10th Cir. 1977)).

effect and just two days after this suit was filed, Kansas Attorney General Phil Kline issued a press release which indicated that he would not "personally" involve himself in this case, even though typically it would be the Attorney General's obligation to defend the Governor and the other state officials sued by plaintiffs.  Mr. Kline justified this decision by stating that his personal and political beliefs conflict with defendants' position in this case.  Mr. Kline thus decided to "delegate" the defense of the case to his office's Civil Litigation Division.[16] The court neither compliments nor castigates Mr. Kline's decision.  But, as a practical matter, Mr. Kline's ambivalence highlights the very real risks to which the proposed intervenors would be exposed if intervention were not allowed.

Simply stated, although a "presumption of adequate representation arises when an applicant for intervention and an existing party have the same ultimate objective in the litigation,"[17] this presumption is rebutted when the public interest represented by the existing parties "may differ from the would-be intervenor's particular interest."[18]  The court finds that the proposed intervenors have rebutted the presumption of adequate representation.  Further, the court finds that the existing defendants, despite the best of intentions, may not adequately represent the proposed intervenors' interests in this case.

---

[16]  *See* Exhibit 1 to memorandum in support of motion to intervene (doc. 12).

[17]  *Utah Ass'n of Counties,* 255 F.3d at 1255 (citing *Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996)).

[18]  *Id.* (citing *Coalition of Ariz./New Mexico Counties for Stable Econ. Growth v. Dept. of Interior*, 100 F.3d 837, 845 (10th Cir. 1996)).

4.      **Timeliness of the Motion for Intervention.**

Plaintiffs filed this case on July 19, 2004.   The proposed intervenors moved to intervene three months later, on October 20, 2004.   Notably, when the motion to intervene was filed, no significant motions had been filed, and no case management deadlines had been set.   That is, the initial scheduling conference in this case was not held until November 9, 2004.[19]

The court assesses the timeliness of a motion for intervention under Rule 24 "in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances."[20]   Courts have held that intervention was timely even where three years had passed since the filing of the complaint.[21]

Plaintiffs have not shown how, if at all, they would be prejudiced by allowing intervention here.   The existing defendants do not oppose intervention.   The movants, for the reasons stated above, clearly would be prejudiced by denying leave to intervene.   There was no undue delay in moving to intervene.   The court concludes that the motion to intervene in this case was made in a timely manner and thus satisfies this requirement of Rule 24.

---

[19]   *See* doc. 27.

[20]   *See Sanguine, Ltd. v. United States Dep't of Interior*, 736 F.2d 1416, 1418 (10th Cir. 1984).

[21]   *See Utah Ass'n of Counties*, 255 F.3d at 1250.

5.      **Standing of HALO and Kansas LULAC.**

Plaintiffs argue that HALO and Kansas LULAC, both unincorporated associations, lack standing to sue on behalf of their members in this case. The proposed intervenors argue that standing is not a requirement for their intervention. In fact, there is a split among the circuits regarding whether an intervenor must meet the standing requirements of Article III. It appears that this issue still is unresolved in the Tenth Circuit. In any event, it seems unnecessary here for the court to determine whether standing is a requirement in intervention cases. This is because the proposed intervenors seek to intervene as *defendants*. That is, standing must be proven by the party invoking federal jurisdiction, typically the plaintiff. The Supreme Court has held that Article III standing requirements are met as long as at least one or more of the plaintiffs have a personal stake in the outcome of the controversy.[22] Therefore, the court concludes that standing requirements (if indeed standing is required for defendants at all) would be met here because the standing of at least some of the proposed intervenor-defendants (i.e., A. Doe, J. Doe, and L. Doe) is not challenged by plaintiffs on any basis other than the previously rejected (i.e., circular) argument that HB 2145 is unconstitutional.

---

[22]   *See Buckley v. Valeo*, 424 U.S. 1, 12 (1976); and *Watt v. Energy Action Educ. Found.*, 454 U.S. 151, 160 (1981). In this regard, it should be noted that, via recently filed motions to dismiss, *plaintiffs'* standing in this litigation has been challenged by the existing defendants as well as the proposed intervenors. *See* docs. 41-44.

But even assuming for the sake of discussion that there is a requirement that must be met for all of the proposed defendant intervenors, the undersigned magistrate judge concludes, for the reasons explained below, that HALO and Kansas LULAC also satisfy standing requirements in this case.  Of course, should Judge Rogers disagree on this point, that certainly is his prerogative.

The Supreme Court has outlined a three-part test for deciding whether an association has standing to sue on behalf of its members.[23]   Under this test, at least as restated by the Tenth Circuit, "[a]n association has standing when '(a) its members would otherwise have standing to sue in their own right; (b) the interest it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'"[24]

HALO and Kansas LULAC meet all three of these requirements.  HALO asserts that its membership at Kansas State University includes undocumented Kansas students.  Kansas LULAC represents that it does not ask its members about their residency or citizenship status, but maintains that its activities serve the interests of undocumented students, and that it "probably" has such students among its membership.  In any event, Kansas LULAC's

---

[23] *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).

[24] *Bressler v. Amer. Fed'n of Human Rights*, 44 Fed. Appx. 303, 343 (10th Cir. 2002) (citing *Hunt*, 432 U.S. at 343).

activities will potentially be harmed if plaintiffs prevail in this case.[25]   Therefore, the court concludes that the individual members of these organizations would be entitled to bring suit on their own behalf and that the interests HALO and Kansas LULAC seek to protect are germane to those groups' purposes.   Finally, it does not appear that any of the claims asserted, or the relief requested, require the members of these organizations to individually participate in this case.   Therefore, the court concludes that the proposed intervenors meet any standing requirements which may exist in this case.

For the reasons set forth above, the court concludes that the proposed intervenors have satisfied all of the requirements of Fed. R. Civ. P. 24(a)(2).   The motion to intervene therefore is granted, as a matter of right.

**B.      Motion for Protective Order.**

As earlier indicated, A., J., and L. Doe have asked the court to enter a protective order which would allow them to continue to proceed anonymously in this case.   Each of these proposed intervenors allegedly are students at Kansas public colleges, and each lacks lawful immigration status.   They moved to the United States from Mexico with their parents.[26]  Each of these proposed intervenors, through counsel, asserts:

> She is concerned that if her identity as an undocumented person became known, that certain members of the community might

---

[25] *See Sierra Club v. Morton*, 405 U.S. 727, 739 (1972) (organization must show that its activities or its members will suffer injury).

[26] The court presumes that all three of these anonymous intervenors were brought here as minors.  However, the motion is silent as to whether this is true of L. Doe.

threaten or otherwise make difficult her continued presence at
school.  She also fears that someone might report her presence
and that of her family to the U.S. Citizenship and Immigration
Services, jeopardizing the life they have made here.[27]

In addition, and more particularly, A. Doe has stated under oath:

> While I have been a student at the University of Kansas,
> several students have come to me to complain about
> "immigrants" and "illegal aliens" working in Kansas.  These
> complaints have not been directed at me but at others, notably
> "those in Garden City."  I have little doubt that if these students
> knew I was undocumented and seeking to support AB 2145
> [sic], I would become the object of substantial ill feeling and
> possibly retaliation.  I am thus fearful for my safety if my
> identity became known.
>
> If my identity becomes known, I am fearful that someone
> would report my parents and me to the immigration authorities.
> In the four and one-half years since we arrived in the United
> States, we have created a productive life in Kansas.  To be
> deported would create a terrible hardship on all of us.[28]

And L. Doe similarly has stated:

> I am fearful that if my identity were made known to the
> general public through this case that it would jeopardize the
> continued residence of myself, my brother, and my parents, who
> sacrificed so much to make a new life here in Kansas.  This fear
> is based on the fear that our identity would be reported to
> immigration officials who would seek to deport us to Mexico,
> where we no longer have anything.

---

[27] Doc. 13, at 2.  This particular paragraph refers to A. Doe.  However, other than
differences in language to account for the gender of the student, the allegations of each of
the anonymous intervenors are identical.

[28] Doc. 37, Attach. 1, at ¶¶ 5-6.

> I also am fearful that public identity of my status could lead fellow students who do not agree with the lawsuit and who may be hostile to undocumented persons to treat me badly at school. This would be a change from my current situation in which I have fully integrated into the KSU community.[29]

The intervenors propose an order which would allow plaintiffs to learn their identities, but which would prevent disclosure of their identities to any non-parties. Plaintiffs oppose this motion on two grounds. First, plaintiffs argue that the court lacks the power to prevent any of the parties from disclosing information to the United States Department of Immigration and Customs Enforcement ("ICE") with regard to any undocumented alien. And secondly, plaintiffs argue that these proposed intervenors' immigration status is not the type of personal information that merits the requested relief.

Fed. R. Civ. P. 26(c) provides that a court, upon a showing of good cause, "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." As the parties seeking a protective order, the proposed intervenors of course must show that good cause exists to warrant such an order.[30] "To establish good cause, [the] party must submit 'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'"[31]

---

[29] Doc. 37, Attach. 2, at ¶¶ 4-5.

[30] *Bryan v. Eichenwald*, 191 F.R.D. 650, 651 (D. Kan. 2000) (citing *Sentry Ins. v. Shivers*, 164 F.R.D. 255, 256 (D. Kan. 1996)).

[31] *Id.* (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n. 16 (1981)).

As a preliminary matter, but ultimately quite significantly, the court finds that the proposed intervenors have <u>not</u> met the specificity requirement of Rule 26(c).  Although the court understands and appreciates the potential stigma attached to the anonymous intervenors' undocumented status, the court finds that the sparse record, with only very vague and conclusory allegations regarding this stigma and possible retribution, are not particular enough to warrant a protective order.

As to the more substantive, practical matter of whether this motion <u>would</u> be granted in this case upon a more specific showing, the court will address the two principal legal questions briefed by the parties.  First, does federal law bar the court from preventing disclosure of immigration status?  Second, is undocumented alien status the type of personal information the court should protect by allowing parties to proceed anonymously?  As explained in more detail, the answers to both of these questions is "No."

**1.      The Court's Power to Take the Action Requested.**

Plaintiffs assert that 8 U.S.C. §§ 1373 and 1644 preclude this court "from ordering that parties to this case or their counsel not disclose the proposed intervener's [sic] identities to the public or the federal government."[32]  Plaintiffs, at best, are only partially correct in this assertion.

8 U.S.C. § 1373 provides:

---

[32] Doc. 32, at 12.

> Notwithstanding any other provision of Federal, State, or local law, a Federal, State, or local government entity or official may not prohibit, or in any way restrict, ***any government entity or official*** from sending to, or receiving from, the Immigration and Naturalization Service information regarding the citizenship or immigration status, lawful or unlawful, of any individual. (Emphasis added.)

8 U.S.C. § 1644 is similarly limited.  It is clear from the plain language of these statutes that they only apply here to the extent that this court would purport to prevent disclosure *by a government entity or official to ICE*.  Nothing in either of these statutes precludes the court from ordering *plaintiffs*, who are private citizens instead of government officials, to refrain from disclosing the information at issue.

There is nothing in the record from which it can reasonably be inferred that the government officials who are defendants of record have any interest in "outing" the proposed intervenors as undocumented aliens.  Notably, none of the defendants have filed any opposition to the motion for a protective order.  The only parties opposed to entry of such an order are plaintiffs.

In any event, despite plaintiffs' disturbingly casual reading of 8 U.S.C. §§ 1373 and 1644, the court finds that it clearly <u>does</u> have the power to preclude plaintiffs from disclosing immigration status information to any person or entity, including ICE.  Since the court has the power and discretion to enter the requested order, at least to the extent that it would bind plaintiffs, the court will proceed to examine whether such an order is appropriate in this particular case.

2.     **Whether Immigration Status is the Type of Personal Information that Warrants Leave to Proceed Anonymously.**

Proceeding under a pseudonym in federal court is, by all accounts, "an unusual procedure."[33]   Moreover, there does not appear to be any specific statute or rule supporting the practice.[34]   In *Femedeer v. Haun*, the Tenth Circuit held that "[t]o the contrary, the Federal Rules of Civil Procedure mandate that all pleadings contain the name of the parties, and Rule 17(a) specifically states that '[e]very action shall be prosecuted in the name of the real party in interest.'"[35]

However, like other courts, the Tenth Circuit has "recognized that there may be exceptional circumstances warranting some form of anonymity in judicial proceedings."[36] Although totally ignored by the proposed intervenors as well as the plaintiffs, in *Femedeer* the Tenth Circuit adopted the following standard:

> Lawsuits are public events.  A plaintiff should be permitted to proceed anonymously only in exceptional cases involving matters of highly sensitive and personal nature, real danger of physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity.

---

[33] *M.M. v. Zavaras,* 139 F.3d 798, 800 (10th Cir.1998) (quotation omitted).

[34] *See id.*

[35] 227 F.3d 1244, 1246 (10th Cir. 2000) (citing Fed. R. Civ. P. 10(a), and quoting Fed. R. Civ. P. 17(a)).

[36] *Id.*

The risk that a plaintiff may suffer some embarrassment is not enough.[37]

The Tenth Circuit also has "held that it is proper to weigh the public interest in determining whether some form of anonymity is warranted."[38]

In *Femedeer,* the Tenth Circuit was called upon to determine whether a convicted sex offender should be allowed to proceed anonymously in order to conceal his sex offender status.   The subject of the litigation was whether Utah's sex offender registry was unconstitutional.   Since the ultimate goal of plaintiff's case was to keep his sex offender status from becoming public knowledge, plaintiff wanted to proceed anonymously with his attack on the registry law.

As the Tenth Circuit stated in *Femedeer*, "the public has an important interest in access to legal proceedings, particularly those attacking the constitutionality of popularly enacted legislation."[39]   The court also found that the plaintiff in that case had not "established real, imminent personal danger."[40]   Finally, the court concluded that the disclosure of his "identity in the caption of [the] lawsuit is not coterminous to the harm he is seeking to avoid

---

[37] *Id*. (quoting *Doe v. Frank*, 951 F. 2d, 320, 324 (11th Cir. 1992)).

[38] *Id.,* citing *Zavaras,* 139 F.3d at 802-03.

[39] *Id.*

[40] *Id.*

by filing [his] claim . . .. Ordinarily, those using the courts must be prepared to accept the

public scrutiny that is an inherent part of public trials."[41]

Although the undersigned magistrate judge believes that Tenth Circuit precedent is

absolutely binding here, it should be noted that other courts dealing with this issue of

anonymity have looked at various factors that have relevance to the case at bar:

> whether the justification asserted by the requesting party is
> merely to avoid the annoyance and criticism that may attend any
> litigation or is to preserve privacy in a matter of sensitive and
> highly personal nature; whether identification poses a risk of
> retaliatory physical or mental harm to the requesting party or
> even more critically, to innocent non-parties; the ages of the
> persons whose privacy interests are sought to be protected;
> whether the action is against a governmental or private party;
> and, relatedly, the risk of unfairness to the opposing party from
> allowing an action against it to proceed anonymously.[42]

The court, as noted above, appreciates the fact that undocumented alien status is a

sensitive matter. However, particularly in this day and age (as witnessed by the very

enactment of HB 2145), this sort of information strikes the court as fundamentally

distinguishable from the type of "highly personal" information that has led other courts to

grant leave to proceed anonymously, such as in *Doe v. A Corp.*[43] and *Doe v. United Serv. Life*

---

[41] *Id.*

[42] *James v. Jacobsen*, 6 F.3d 233, 238 (4th Cir. 1993).

[43] 709 F.2d 1043, 1044 n. 1 (5th Cir.1983) (anonymity of both parties warranted to
protect attorney-client privilege).

*Ins. Co.*[44]  Likewise, as distinguished from cases like *Roe v. Wade*,[45] and the five cases upon which the Doe parties heavily rely,[46] the anonymous intervenors are not challenging a criminal statute, such that the outcome of this case would change whether they were violating federal laws.  Nor are the proposed intervenors challenging the constitutionality of the laws which make their immigration status illegal, i.e., regardless of the outcome of this case, the anonymous intervenors probably will continue to be undocumented aliens.  This case will only affect the amount of tuition they will be asked to pay to attend public Kansas universities.  This factor weighs against entry of a protective order.

The anonymous intervenors have alleged a general fear of stigma and retaliation if their identities are disclosed.  However, as noted above, the record simply does not support

---

[44] 123 F.R.D. 437, 439 (S.D.N.Y. 1988) (anonymity allowed because of sensitive privacy and retaliation concerns in suit by homosexual against insurance company alleging discriminatory practices; no unfairness to defendant who was aware of claimant's true identity).

[45] 410 U.S. 113 (1973).  It does not appear that the plaintiff's anonymity was contested in *Roe v. Wade*.  In any event, Ms. Roe's desire to have an abortion in contravention of an existing Texas statute clearly rises to the level of the "highly personal" information that is safeguarded through anonymous proceedings.

[46] *Doe v. Miller*, 573 F. Supp. 461 (N.D. Ill. 1983); *John Doe I. v. Meese*, 690 F. Supp. 1572 (S.D. Tex. 1988); *John Doe I v. Georgia Dep't of Public Safety*, 147 F. Supp. 2d 1369 (N.D. Ga. 2001); *Carmen Doe v. Wilson*, 67 Cal. Rptr. 2d 187 (Cal. Ct. App. 1997); and *Doe v. Comm'r of Transitional Assistance*, 773 N.E. 2d 404 (Mass. 2002).  The Doe parties cite these five cases in their reply brief (doc. 37), to support the proposition that "[t]he overwhelming authority supports anonymity for undocumented persons." But the Doe parties fail to mention that none of these five cases states any rationale or analysis to justify the decision to allow undocumented persons to litigate anonymously.  Therefore, these cases are unpersuasive.

the relief that they have requested.  That is, the court finds that the vague, conclusory allegations by the Doe parties do not support the entry of a protective order.  The anonymous intervenors claim that they are afraid of risking deportation but, according to the representations set forth in their motion to intervene, these students already have sworn out affidavits attesting that they are taking all necessary steps to obtain legal citizenship.  The court would be astonished if the anonymous intervenors were a top ICE priority, given their representations that they are attempting to obtain legal status.  This weighs against entry of a protective order.

As to the effect disclosure may have on the anonymous intervenors' families, this weighs in favor of granting the motion for a protective order, but only slightly.  The intervenors' families are non-parties and might be considered "innocent."  However, this is always the case when an undocumented alien files a lawsuit that does not also involve his or her family members.  The court declines to adopt in effect what would be a general rule protecting illegal immigration status of non-party family members.  Nor does the court believe that the circumstances of the instant case merit any special consideration for those family members.

None of the anonymous intervenors are minors.  Thus, their ages do not support entry of a protective order.  As to whether the action is against a government agency, that consideration is moot in the instant case; the government actors involved in this lawsuit are on the same side and seek the same outcome as the anonymous intervenors.  In that respect,

this case again dramatically differs from *Roe v. Wade* and the like, where the risk of government retaliation was a substantial consideration.  Therefore, neither of these factors weigh in favor of entry of a protective order.

Finally, it must be acknowledged that granting the requested protective order would not result in any harm to plaintiffs.  The anonymous intervenors have proposed a protective order which would allow plaintiffs to know the intervenors' identities, but would require plaintiffs not to disclose those identities to any non-parties.  The court does not believe that any party would be injured by such an order.  This factor weighs in favor of entry of a protective order.

The court concludes that, on balance, the relevant considerations militate against entry of a protective order.  And in any event, as noted above, in the first instance, the record is such that the anonymous intervenors have not provided a particularized showing of need or other circumstances warranting an order granting leave to proceed anonymously.

### III.  Conclusion and Order.

The court grants the motion to intervene filed by Kansas LULAC, HALO, and A., J., and L. Doe **(doc. 11)**.  The court, however, denies the motion for a protective order to allow the Doe defendants to continue to proceed anonymously **(doc. 13)**.  The five intervenors shall file an amended answer to plaintiffs' amended complaint by **March 4, 2005**.  The caption and the body of their amended answer shall include the true names of all the intervenors.

IT IS SO ORDERED.

Dated this 24th day of February, 2005, at Kansas City, Kansas.


_  s/   James P. O'Hara_____
James P. O'Hara
U.S. Magistrate Judge